UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST ) <br> COMPANY, AS TRUSTEE UNDER THE ) <br> POOLING AND SERVICING AGREEMENT ) <br> DATED AS OF APRIL 1, 2003, MORGAN ) <br> STANLEY CAPITAL I INC. TRUST ) <br> 2003-NC4, ) <br> ) <br>       Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> DAWN C. PICKAR, GREGORY A. PICKAR, ) <br> ) <br>       Defendants. ) <br> _____ ) <br> DAWN C. PICKAR, GREGORY A. PICKAR, ) <br> ) <br>       Counter-Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> LITTON LOAN SERVICING, LP, OCWEN ) <br> LOAN SERVICING LLC, DEUTSCHE BANK ) <br> AS TRUSTEE UNDER THE POOLING AND ) <br> SERVICING AGREEMENT DATED 4/1/03, ) <br> ) <br>       Counter-Defendants. ) | No. 12 C 973 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement dated as of April 1, 2003, Morgan Stanley Capital I Inc. Trust 2003-NC4 ("Deutsche Bank") filed suit against Defendants Dawn and Gregory Pickar, seeking to foreclose on the Pickars' mortgage because they have not made their required monthly mortgage payments since September 2009. The Pickars filed counterclaims against Deutsche Bank, Ocwen Loan Servicing, LLC ("Ocwen"), and Litton Loan Servicing, LLC ("Litton"), alleging violations of the

Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*[1] Deutsche Bank and Ocwen have moved for summary judgment on Deutsche Bank's foreclosure complaint and the Pickars' counterclaims. The Pickars have cross-moved for summary judgment on their counterclaims. Because Deutsche Bank has demonstrated that it is entitled to a judgment of foreclosure and reformation against the Pickars, the Court enters judgment on Deutsche Bank's complaint. And because the Pickars have failed to establish their UDTPA and ICFA claims, the Court grants judgment for Deutsche Bank, Ocwen, and Litton on the Pickars' counterclaims.

## BACKGROUND[2]

On December 30, 2002, the Pickars executed a promissory note to New Century Mortgage Corporation ("New Century") for $121,550 (the "Note"). As security for the Note, the Pickars also executed a mortgage to New Century for the real property located at 3147 178th

---

[1] The claims against Litton and Ocwen are more appropriately considered third-party claims, as Litton and Ocwen are not plaintiffs in this action. There is no record on the docket that Litton or Ocwen were served, but counsel for Deutsche Bank also filed an appearance for Ocwen after the Pickars filed the counterclaim. Litton has not participated in the litigation. To the extent Deutsche Bank and Ocwen raise arguments that apply equally to Litton, the Court extends them to Litton because the Pickars had the opportunity to respond to all arguments. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendant Mortg. Corp.*, No. 1:11-CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although three defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by other defendant to all of them and dismiss claims against all defendants).

[2] It appears that Deutsche Bank and Ocwen filed a Joint Statement of Undisputed Facts in which the Pickars did not participate. The Pickars filed a revised version, keeping Deutsche Bank and Ocwen's statements but adding several of its own. The Court includes in this background section only those portions of the statements of fact that are appropriately presented, supported, and relevant to resolution of the pending motions for summary judgment. All facts are taken in the light most favorable to the non-movant in each motion.

Place, Lansing, Illinois 60438 (the "Mortgage"). New Century assigned the Mortgage to Deutsche Bank on January 13, 2003.

In 2008, Deutsche Bank filed a foreclosure action against the Pickars. On November 10, 2008, the parties entered into an Agreed Repayment Plan. On April 28, 2009, Mr. Pickar called Litton, which was servicing the loan at the time, to request a modification, providing information regarding the Pickars' income to Litton. Based on this information, Litton determined that the Pickars' unverified monthly gross income was $4,022. On June 24, Litton sent the Pickars a letter containing a modification workout plan, which the Pickars signed on July 10 and submitted to Litton along with documentation to verify their income. After reviewing these documents, Litton determined that the Pickars' monthly gross income was actually $5,896.56. This difference between the unverified and verified monthly gross income caused Litton to deny the pending modification. Litton informed Mrs. Pickar of the denial over the telephone on August 28, 2009. Litton reviewed whether other modification options were available, but it found the Pickars did not qualify for any. Litton began participating in the Home Affordable Modification Program ("HAMP") in August 2009. At the time the Pickars submitted the workout plan that July, their housing debt to income ("HDTI") ratio was 26.51%.

After signing the workout plan in July 2009, the Pickars submitted three payments to Litton. Litton received these payments on July 13, 2009, August 31, 2009, and September 29, 2009. Litton credited the Pickars' account with the July 13 payment but returned the August 31 and September 29 payments to the Pickars because the workout plan had been rejected by that time. The Pickars have made no further payments.

In September 2010, Litton denied the Pickars a modification because their monthly HDTI was less than or equal to 31% at that time. In January 2011, Litton again reviewed the Pickars'

loan for a modification under HAMP but determined the Pickars were not eligible because the investor of the loan only allowed one modification throughout the life of the loan.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Deutsche Bank's motion for summary judgment, the Court views all evidence in the light most favorable to the Pickars, and when considering the Pickars' motion for summary judgment, the Court views all evidence in the light most favorable to Deutsche Bank. *Id.*

ANALYSIS

I.  **Mortgage Foreclosure (First Amended Complaint Count I)**

Whether Deutsche Bank may foreclose on the Mortgage is a matter of contractual interpretation. *Bank of N.Y. Mellon v. Ward*, No. 12 C 8051, 2013 WL 1730584, at *2 (N.D. Ill. Apr. 22, 2013). Determining whether a contract is ambiguous and how to construe an unambiguous contract are both questions of law for the Court. *See Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379–80 (7th Cir. 2009) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 50, 226 Ill. 2d 208, 314 Ill. Dec. 133 (2007)). "If the contract's language is unambiguous, it must be given its plain and ordinary meaning." *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 47, 241 Ill. 2d 428, 349 Ill. Dec. 936 (2011)).

The operative terms of both the Note and Mortgage are unambiguous. The Note defines "default" as the failure to "pay the full amount of each monthly payment on the date it is due." Doc. 109-2 at 3. The Mortgage states that it secures "the repayment of the Loan, and all renewals, extensions and modifications of the Note."[3] Doc. 109-3 at 3. The Mortgage further states that if a borrower's default is not cured, the lender "at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." *Id.* at 13. The Mortgage also sets out that in the event of default, the holder of the Mortgage "shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence." *Id.*

---

[3] The Mortgage defines "Loan" as "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest." Doc. 109-3 at 2.

The Pickars argue that genuine issues of dispute exist regarding (1) whether Deutsche Bank has physical possession of the Note, (2) whether the Pickars entered into a loan modification, and (3) the amount of indebtedness. But the record indicates otherwise. First, Deutsche Bank attached a copy of the Note to the complaint. Under Illinois law, "the mere attachment of a note to a complaint is *prima facie* evidence that plaintiff owns the note" and demonstrates Deutsche Bank's possession of it.[4] *JP Morgan Chase Bank v. Jenkins*, No. 14 C 4278, 2015 WL 603855, at *2–3 (N.D. Ill. Feb. 12, 2015) (quoting *Rosestone Invs., LLC v. Garner*, 2 N.E.3d 532, 540, 2013 IL App (1st) 123422, 377 Ill. Dec. 616 (2013). The Pickars have not pointed to anything in the record to undermine this presumption, and so the Court finds it undisputed that Deutsche Bank (through its servicer, Ocwen) holds the Note and the Mortgage, entitling Deutsche Bank to foreclose on the Mortgage.

Next, the Pickars argue that a question exists as to whether they entered into a valid loan modification, precluding a finding that they defaulted on their obligations. But the Pickars themselves agree in their revised statement of undisputed facts that, in 2009, Litton denied the modification due to the difference in the unverified monthly gross income Mr. Pickar provided to Litton over the phone on April 28, 2009 and the verified monthly gross income the Pickars provided when they returned the loan modification documentation to Litton in July 2009. The Pickars admit that Litton informed Mrs. Pickar of the denial of the modification on August 28, 2009 over the telephone. The workout plan itself provides that it does not "take effect unless and until both [the Pickars] and the Lender sign it and Lender provides [the Pickars] with a copy of this Plan with the Lender's signature." Doc. 117-1 at 2. The workout plan in the record only includes the Pickars' signature, however. The evidence thus does not support finding a dispute

---

[4] Technically, Ocwen, which currently acts as the servicer for Deutsche Bank, is in possession of the Note according to Kyle Lucas' affidavit, which Deutsche Bank and Ocwen have submitted in support of their motion for summary judgment. *See* Doc. 109-1 at 4.

concerning whether the Pickars entered into a modification; instead, because the Pickars admit they did not make any monthly payments after September 2009, the Court finds it undisputed that they have defaulted on their obligations to Deutsche Bank under the Note and Mortgage.

The Pickars finally argue that a dispute exists concerning the amounts they owe Deutsche Bank. Deutsche Bank presents an affidavit, with supporting documentation, from an Ocwen loan analyst indicating that the Pickars owe Deutsche Bank a total of $259,435.70 as of January 23, 2017, with $119,883.34 of that being the principal balance and $89,391.27 interest, and additional interest accruing at a rate of $30.80 per day.[5] The Pickars argue, without any support, that these amounts are incorrect because Deutsche Bank improperly denied its loan modification, but the parties agree that the workout plan had been based on an incorrectly reported monthly income, providing a valid reason for Deutsche Bank to find the Pickars did not qualify for the modification. *See* Doc. 117-1 at 1 (stating that if the "income documentation does not support the income amount that [the Pickars] previously provided . . . [the Pickars] may not qualify for this loan modification program"). The Pickars also contend that it is unclear how Deutsche Bank applied payments the Pickars made during the trial modification period in 2009 and whether any payments they made were credited back to them. The parties have agreed, however, that the first payment Litton received under the workout plan was applied to the loan, while the second and third were returned to the Pickars. This resolves any disputes about the payments made during the trial modification period. Having made no additional specific objections to Deutsche Bank's calculations, the Court finds no disputed issue of fact concerning the amounts the Pickars owe. Therefore, Deutsche Bank has demonstrated that the Pickars have defaulted on the Note and that,

---

[5] Deutsche Bank also states that it has incurred additional attorneys' fees and costs as a result of this litigation, but it has not presented an additional affidavit setting forth these fees and costs.

pursuant to the Mortgage's terms, Deutsche Bank is entitled to foreclose on the property to recover the balance on the Note, interest, associated charges, attorneys' fees, and costs.

## II.     Reformation of Mortgage (First Amended Complaint Count II)

In its amended complaint, Deutsche Bank asks the Court to reform the Mortgage's legal description of the property, contending that, due to a scrivener's error, the legal description in the mortgage fails to include a word so as to properly describe the property commonly known as 3147 178th Place, Lansing, Illinois 60438.  Specifically, the correct legal description, according to Deutsche Bank, should read:

> LOT 4 IN **VICTOR** M. SZURGOT`S SUBDIVISION PART OF
> THE EAST 1/2 OF THE NORTHEAST 1/4 OF SECTION 31,
> TOWNSHIP 36 NORTH, RANGE 15, EAST OF THE THIRD
> PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT
> THEREOF REGISTERED IN THE OFFICE OF THE
> REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON
> MAY 13, 1966, AS DOCUMENT NUMBER 2270983, IN COOK
> COUNTY, ILLINOIS.

Doc. 60 ¶ 19 (emphasis indicating the word to be added).  Deutsche Bank contends that the omission of the word "Victor" in the Mortgage amounts to a mutual mistake and was not fundamental to an essential element of the contract.  Indeed, the parties specified in the Mortgage the common address of the property, suggesting that they understood that the legal description referred to the property at issue and that, as Deutsche Bank argues, omission of the one word amounts to a scrivener's error.  The Pickars do not respond to Deutsche Bank's arguments on the reformation claim, effectively conceding the issue, and so the Court grants judgment for Deutsche Bank and reforms the legal description of the property in the Mortgage as requested. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

### III. UDTPA Claim (Counterclaim Count I)

In their counterclaim, the Pickars allege that Deutsche Bank, Ocwen, and Litton engaged in deceptive trade practices in their loan modification representations and decisions. Among other things, the Pickars contend that Deutsche Bank and its servicers acted deceptively in (1) representing that Litton offered a HAMP loan modification in June 2009 when Litton did not join HAMP until later that year; (2) accepting and then rejecting the June 2009 workout plan; and (3) providing false reasons for rejecting loan modifications, including that the Pickars failed to make timely payments under the workout plan, that they did not meet the required HDTI, that only one loan modification was allowed during the life of the loan, and that the loan modification was denied due to an alleged variance in the financial information the Pickars provided.

The UDTPA only provides for injunctive relief where a plaintiff can "show that the defendant's conduct will likely cause it to suffer damages in the future." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 857, 392 Ill. App. 3d 1, 330 Ill. Dec. 826 (2009). "Proving the likelihood of future harm is difficult under the IUDTPA because the harm from the allegedly deceptive practice has usually already occurred." *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015). Although Deutsche Bank and Ocwen continue to argue that they have not found any authority authorizing the Pickars' requested relief of dismissing the foreclosure action or retroactively enforcing the June 2009 workout plan, the Court previously found that the continued threat of foreclosure sufficiently amounts to potential future harm justifying injunctive relief. *See* Doc. 95 at 3 (citing *Thomas v. Urban P'ship Bank*, No. 12 C 6257, 2013 WL 1788522, at *11 (N.D. Ill. Apr. 26, 2013).

But the Pickars' UDTPA claim nonetheless fails at the summary judgment stage because they have not shown a genuine issue of fact as to whether Deutsche Bank, Ocwen, or Litton engaged in a deceptive business practice. First, the Pickars contend that Litton offered a HAMP loan modification in June 2009 when Litton only began participating in HAMP in August 2009, but the workout plan explicitly provides that it was not being offered pursuant to HAMP. Doc. 117-1 at 1 ("This modification is not a government Home Affordable Modification, and you will not be eligible to receive the benefits of the government program through this modification."). The Pickars also contend that they fully complied with the workout plan, but the Court has already determined that the parties never fully executed the workout plan because, as the parties agree, the Pickars' verified monthly income exceeded that which Mr. Pickar reported to Litton over the phone. Although the Pickars may have received differing explanations for why Litton rejected the modification over the years, the fact remains undisputed by the parties that Litton rejected the modification in August 2009 and Litton communicated that rejection to Mrs. Pickar by phone at that time, meaning any later explanations for the rejection of the workout plan cannot have damaged them.[6] Additionally, the Pickars have provided no basis for the Court to find that Deutsche Bank's, Litton's, or Ocwen's actions caused the Pickars to stop making payments on the Note in September 2009, which amounts to the default that brought on the current foreclosure action. The Pickars cannot rely on a letter from May 2011 to contend that Deutsche Bank, Litton, or Ocwen deceived them into not making payments in September 2009, where they had received notice before that date that Litton had not accepted the workout plan.

---

[6] In their counterclaim, the Pickars also raise other claims of deceptive trade practices, such as that they were incorrectly told they did not qualify for a loan modification based on their HDTI or on investor guidelines allowing only one loan modification per loan cycle. The Pickars do not appear to be pursuing these aspects of their claim on summary judgment, failing to mention them either in response to Deutsche Bank and Ocwen's motion or in their separate cross-motion. Thus, the Court deems these contentions abandoned.

Because the Pickars' own actions caused the future harm at issue here—the foreclosure of their property—the Court must grant judgment on their UDTPA claim to Deutsche Bank, Ocwen, and Litton.

## IV.  ICFA Claim (Counterclaim Count II)

To prevail on their ICFA claim, the Pickars must establish (1) a deceptive or unfair act or practice by Deutsche Bank, Litton, and Ocwen, (2) Deutsche Bank, Litton, and Ocwen's intent that the Pickars rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred in the course of conduct involving trade or commerce, and (4) the deceptive or unfair practice caused the Pickars actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). The Pickars must also "demonstrate that the defendant's conduct is the proximate cause of the injury." *Wigod*, 673 F.3d at 574.

The Pickars' ICFA allegations closely resemble their UDTPA claim. As with that claim, the Pickars have not demonstrated deceptive conduct that caused them injury, which here would mean inducement to stop making payments on their loan beginning in September 2009.[7] Once the Pickars stopped making payments, Deutsche Bank became entitled to foreclose on the Mortgage, meaning that any inaccurate or deceptive statements by Deutsche Bank, Litton, or Ocwen after that time could not have caused the Pickars damage. *See Vangsness v. Deutsche Bank Nat'l Tr. Co. ex rel. Morgan Stanley Home Equity Loan Tr. 2007-1*, No. 12 C 50003, 2015 WL 5676018, at *4 (N.D. Ill. Sept. 25, 2015) (once bank had the right to foreclose, plaintiffs could not claim to be injured by any statements so as to give rise to ICFA claim); *McGann v.*

---

[7] To the extent the Pickars complain about actions taken before September 2009, as the Court has already discussed in connection with the UDTPA claims, the Pickars' claims of deceptive conduct are belied by the record. The record establishes that the workout plan made clear it did not go into effect until fully accepted by all parties and the Pickars' income was verified, and it also provided that it was not being offered under HAMP.

11

*PNC Bank, Nat'l Ass'n*, No. 11 C 6894, 2015 WL 5050155, at *7 (N.D. Ill. Aug. 25, 2015) (plaintiff provided no evidence supporting a finding that the bank's allegedly deceptive conduct proximately caused her default and foreclosure). Because the Pickars have not demonstrated that Deutsche Bank, Ocwen, or Litton's conduct proximately caused their injury, the Court grants summary judgment for Deutsche Bank, Ocwen, and Litton on the ICFA claim.

## CONCLUSION

For the foregoing reasons, the Court grants Deutsche Bank and Ocwen's motion for summary judgment [107] and denies the Pickars' cross-motion for summary judgment [113]. The Court enters judgment for Deutsche Bank on its first amended complaint and for Deutsche Bank, Ocwen, and Litton on the Pickars' counterclaims.

Dated: August 14, 2017

SARA L. ELLIS
United States District Judge